UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHAD EVERETT LAMOTHE,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 2:23-cv-00206-EJY<br><br>**ORDER** |

Pending before the Court are Plaintiff's Motion for Reversal and Remand (ECF No. 12) and Defendant's Cross-Motion to Affirm (ECF No. 14). The Court has considered the Motion and Cross-Motion as well as the Opposition and Reply. For the reasons stated below the Court denies Plaintiff's Motion for Reversal and Remand and grants Defendant's Cross-Motion to Affirm.[1]

**I.   Issue Presented for Review.**

Plaintiff is clear that he presents discrete issues for the Court's review. These include:

1. "Whether remand is required where the Administrative Law Judge (ALJ) failed to either include mental limitations she found credible in her residual functional capacity (RFC) determination or to explain why she was omitting these admittedly credible mental limitations."

2. "Whether remand is required where the ALJ substituted her own lay judgment for that of every medical opinion of record regarding Mr. Lamothe's physical impairments."

3. "Whether remand is required where the ALJ failed to accept and include or reject and explain why she was not including in the RFC determination the mental functional limitations contained in a medical source opinion which she determined had persuasive value."

ECF No. 12 at 3. Plaintiff states in his Motion that a detailed rending of facts are unnecessary (*id.*) and the Court agrees. Therefore, the Court moves to the discussion of the issues presented.

**II.   Summary of the ALJ's Residual Functional Capacity Determination**.

---

[1] The parties do not dispute that Plaintiff's Motion is properly filed after exhausting all remedies available to him while proceeding before the Social Security Administration (the "SSA"). The parties also do not dispute the standard for review, the standard applicable to establishing disability under the Social Security Act (the "Act"), or that the Administrative Law Judge (the "ALJ") used the five-step sequential evaluation process to determine whether Plaintiff is disabled within the meaning of the Act (found at 20 C.F.R. § 404.1520(b)-(f)). These standards are not repeated here.

1

Beginning at page 34 of the Administrative Record (the "AR") the ALJ discusses her findings regarding Plaintiff's Residual Functional Capacity (sometimes "RFC").  AR 34.  Before doing so, the ALJ considered the requirements for mental impairments under 20 C.F.R. § 404.1520a (AR 32) stating "the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the 'paragraph B' criteria."  AR 32.  The ALJ then discussed Plaintiff's mental health in detail.  AR 32-33.  In conclusion, the ALJ stated Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation[s] in any of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1))." *Id*. at 33 (emphasis in original).  The ALJ recognized that the paragraph B criteria are not "residual functional capacity assessment[s,] but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 … requires a more detailed assessment." *Id*.  The ALJ next determined Plaintiff does not have an impairment that meets one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 33-34

Returning to the RFC, the ALJ states that she carefully considered the entire record and determined Plaintiff has the ongoing "capacity to perform light work as defined in 20 CFR 404.1567(b) except he can sit for 6 hours and stand and/or walk for a total of 4 hours." *Id*. at 34.  The ALJ states Plaintiff "can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl … [but] never climb ladders, ropes or scaffolds.  He can tolerate no exposure to heights. … [Plaintiff] can occasionally move mechanical parts or operate a motor vehicle … [and] tolerate occasional exposure to extreme cold, … heat, and vibration." *Id*. at 34.  In reaching her decision, the ALJ discussed Plaintiff's testimony, including "mental dysfunction" and "depression," that contribute to his disability status.  *Id*.  The ALJ cites "function reports" and that Plaintiff alleged anxiety among other ailments.  *Id*.  The ALJ discusses Plaintiff's various physical ailments, which are not at issue in this dispute.  ECF No. 12 at 5; AR 35-37.

With respect to mental limitations, the ALJ states Plaintiff's "mentation has been largely intact in his mental status examinations except for inconsistent mood abnormalities and isolated tangential thought process/pressured speech, which indicates a non-exertional limitation for pain and/or mental impairments … are not necessary." AR 37-38. After discussing other medical history, the ALJ concludes: "Given this level of mental and physical functioning, the undersigned limited … [Plaintiff] to a slightly reduced level of light exertional level work and included additional limitations as precautions for pain from all his physical ailments …." *Id*. at 38.

### III. Summary of Plaintiff's Arguments.

Plaintiff complains the ALJ "adopted absolutely no limitations in mental functioning" when determining Plaintiff's residual functional capacity, and failed to explain why Plaintiff's mild mental functional limitations were not included in the RFC. ECF No. 12 at 8-9. Plaintiff's discussion expresses complete disbelief, arguing the ALJ's determination that Plaintiff could perform his past relevant work as a gambling dealer must be overturned. *Id*. at 11. Plaintiff relies heavily on a Tenth Circuit decision for his argument. *Id*. at 11, 14 *citing Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013).

Plaintiff also complains that the ALJ substituted her lay judgment for medical opinions because she rejected "every single medical opinion" in the record related to Plaintiff's "complicated impairments." ECF No. 12 at 18. Plaintiff says "[n]o medical source of record found … [he] had the RFC for more than sedentary work." *Id*. Plaintiff correctly points out that an ALJ may not substitute her lay judgment for medical evidence presented. *Tobias v. Colvin*, Case No. ED CV 13-1703-E., 2014 WL 2448916, at *5 (C.D. Cal. May 30, 2014 ) *citing Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986).

Finally, Plaintiff argues that "remand is required because the ALJ failed to accept and include or reject and explain why she was not including in the RFC determination the mental functional limitations contained in medical source opinion[s], which she determined had persuasive value." ECF No. 12 at 20 (capitalization and underlined removed). Despite this title, Plaintiff's argument is centered on the ALJ's failure to meet her obligations to "explain how she considered the

3

supportability and consistency factors for" Dr. Olivares' medical opinion. *Id. citing* 20 C.F.R. § 404.1520c(b)(2).[2]

## IV. Analysis.

### A. Remand is required if substantial evidence does not support the ALJ's RFC assessment.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Barnes v. Commissioner of Social Security*, Case No. 1:23-cv-00407-EPG, 2023 WL 7342549, at *1 (E.D. Cal. Nov. 7, 2023) *quoting Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). "In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, … but less than a preponderance." *Id. citing Richardson v. Perales*, 402 U.S. 389, 402 (1971) and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975) (internal quote marks omitted). A scintilla of evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id. quoting Richardson*, 402 U.S. at 401 (internal citation and quote marks omitted). Apropos to the arguments in this case, "because it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, ... the RFC need not exactly match the opinion or findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, Case No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (emphasis in original).

---

[2] This section of the Social Security Regulations ("SSR") state: "The factors of supportability … and consistency … are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."

4

B. The ALJ explained why no mental limitations are included in Plaintiff's RFC.

Despite Plaintiff's reliance on the Tenth Circuit decision in *Wells*, that court's decision was based upon the lack of substantial evidence to support the ALJ's decision and not on the failure to explain why mental limitations were or were not discussed in the ALJ's RFC determination. 727 F.3d at 1071. Plaintiff also relies on *Andrick v. Commissioner of Social Security*, Case No. CV-21-080551-PCT-DLR, 2023 WL 3022465 (D. Ariz. Apr. 20, 2023). In *Andrick*, the Court found "the ALJ performed a 'paragraph B' analysis, determining the mental disabilities" the plaintiff "might have," at step two of the sequential process, but failed to "explain why the mild mental limitation" were "not included in the RFC." *Id*. at *2.[3]

Here, unlike the decisions in *Wells* and *Andrick*, the Court finds the ALJ addressed Plaintiff's mental limitations in her discussion of Plaintiff's RFC, identifying mood abnormalities, isolated tangential thought processes, and pressured speech indicating "a non-exertional limitation" is unnecessary. AR 38. The ALJ also, and importantly, stated that Plaintiff's mental (and physical) functioning led to the "slightly reduced level of light exertional work …." *Id*. The ALJ explained that Dr. Araza, who opined that all of Plaintiff's mental limitations were non-severe, was more persuasive than Dr. Olivares because his opinions were supported by and consistent with the objective medical evidence in the record, "namely the claimant's largely intact mentation, his reported activities[,] and his intact ADL's[4] despite availing himself of a therapist and periodically taking medication" as the ALJ described above. *Id*. at 39 *citing* 20 C.F.R. § 404.1520c. The summarized record, while not repeated in full in this section of the ALJ's findings, are discussed in detail at AR 31-33. When reaching a decision and crafting an RFC, an ALJ is not required to do a function by function analysis "where she relies on medical opinions that define the relevant functional limitations." *Kelley v. Colvin*, 650 Fed.Appx. 482, 483 (9th Cir. 2016).

The Court finds the ALJ's explanation for why she did not include mental functional limitations in her RFC determination is supported by sufficient evidence to meet the substantial

---

[3] The Court notes that Plaintiff cites more than a page of cases decided by courts outside the Ninth Circuit in support of his proposition that the ALJ erred when she failed to include mental limitations she found credible in her residual functional capacity determination. The Court does not discuss each of these cases, but instead looks to the Ninth Circuit and district courts within the Ninth Circuit for guidance.

[4] ADL is an abbreviation for activities of daily living.

evidence standard. As such, Plaintiff's argument for remand on this basis is unavailing. *Jandrejack v. Saul*, 843 Fed.Appx. 993 (9th Cir. 2021). *See also Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022); *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007).

  C. <u>The ALJ did not substitute her own judgement for that of medical opinions pertaining to Plaintiff's mental limitations.</u>

Although an ALJ cannot substitute her lay opinion for the medical opinions presented, it is the ALJ's responsibility to translate and incorporate "clinical findings into a succinct RFC." *Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). In fact, an ALJ is neither required to discuss every piece of evidence nor every word or limitation in an opinion. *See, e.g., James T. v. Kijakazi*, Case No. 21-cv-00556-MMA-JLB, 2022 WL 2952469, at *6 (S.D. Cal. Jul. 26, 2022) *report and recommendation adopted*, 2022 WL 4280647 (S.D. Cal. Sept. 15, 2022). As explained in *Alvarez v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-00601-EPG, 2022 WL 2359322, at *3 (E.D. Cal. June 29, 2022), while "the ALJ did not detail which opined limitations were somewhat persuasive and which were not—a fact [the p]laintiff criticizes—the ALJ was not required to perform a function-by-function analysis, nor address each work-related restriction identified in the record so long as the RFC is otherwise supported by substantial evidence." (Citation and internal quotation marks omitted.) Finally, if the evidence is "susceptible to more than one rational interpretation," the Court is required to affirm the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*)).

Here, Plaintiff concludes the ALJ's RFC determination is based on her judgement because she rejected every medical opinion in the record. ECF No. 12 at 18. However, this is not true. The ALJ expressly states she found Dr. Araza's opinions more persuasive than Dr. Olivares and cites her finding that Plaintiff's mental impairments were not severe. The ALJ cites Plaintiff's mentation is intact, which is supported by the activities of daily living in which he engages. AR 39. The ALJ

synthesized this finding into her consideration that Plaintiff could engage in "a slightly reduced level of light exertional level work." AR 38.

Moreover, the ALJ's RFC determination is not wholly inconsistent with Drs. Chahal and Rutherford's exertional level limitations. Both doctors stated Plaintiff can sit, with normal breaks for 6 hours in an 8 hour day. AR 370, 381. The ALJ also found Plaintiff's RFC required he "sit for 6 hours." AR 34. Drs. Chahal and Rutherford found Plaintiff could frequently climb ramps and stairs (AR 37), while the RFC is more restrictive stating Plaintiff can only do so occasionally. *Compare* AR 370 and 381 *with* AR 34. The doctors and ALJ agree that Plaintiff can never climb ladders, ropes or scaffolds. AR 34, 370, 382. The ALJ limited Plaintiff to only occasionally stooping, kneeling, crouching, and crawling (AR 34) while Dr. Chahal found Plaintiff could frequently do all of these functions (AR 370) and Dr. Rutherford found Plaintiff could occasionally stoop and crouch, but never kneel or crawl. AR 382. The doctors did not opine on Plaintiff's ability to tolerate heights; however, the ALJ found Plaintiff could never do so. AR 34, 370-71, 380-82. The ALJ found Plaintiff could occasionally operate foot controls, move mechanical parts, and operate a motor vehicle, while the doctors' opinions do not mention these functions. *Id*. Drs. Chahal and Rutherford found Plaintiff had an unlimited ability to tolerate exposure to extreme cold and heat. AR 371, 383. The ALJ found Plaintiff can only occasionally tolerate such exposure. AR 34. The ALJ likewise found Plaintiff can occasionally tolerate exposure to vibration (AR 34), the doctors appear to state this similarly when they indicated Plaintiff should "avoid even moderate exposure." *Id*.

The difference of import between Drs. Chahal and Rutherford's opinions and the ALJ's RFC is Plaintiff's ability to walk. The doctors limit Plaintiff to two hours in an eight hour day, while the ALJ found Plaintiff could walk for up to four hours in an eight hour day. AR 34, 370, 381. Light work is defined in 20 C.F.R. § 404.1567(b) as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can

7

> do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Sedentary work is defined at 20 C.F.R. § 404.1567(c) as involving:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The vocational expert testified that Plaintiff's profession as a gambling dealer is generally performed at the light exertion level, but Plaintiff actually performed his position at the sedentary exertion level. AR 40. The vocational expert also testified that Plaintiff return to his gambling dealer job as actually performed. *Id*.

While "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *5, the ALJ modified Plaintiff's RFC to sitting 6 hours and walking no more than 4 hours in a day. AR 34. Adjudicative Guidance for claims "in which the exertional components of the RFC are less or greater than those of a specifically defined exertional range of work" is found at SSR 83-12, 1983 WL 31253, at *1. The Ruling states:

> If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS [vocational specialist] assistance is advisable for these types of cases.

*Id*. at **2-3.  To this end, the ALJ stated: "Pursuant to POMS[5] DI 25025.015, the undersigned finds that the combined total of walking and standing up to four hours rather than six hours is not inconsistent with work within the Light exertion range ([s]*ee also* SSR 83-10)."  AR 40.  The ALJ further stated: "[Plaintiff] testified that he performed his dealer job for four years in the seated position.  This was an accommodation provided by his employer."  *Id*. *citing* POMS DI 25005.020(f).[6]  The ALJ thereafter found Plaintiff's "capacity for Light exertional work is only slightly reduced, which is consistent with the vocational expert's testimony that in her professional experience there are jobs in significant numbers at the Light exertional level."  *Id*.

Plaintiff's briefing does not address his testimony, the testimony of the vocational expert, the ALJ's discussion relating to SSR 83-10, the discussion regarding POMS DI 25025.015, or that the ALJ incorporated all of the limitations recommended by Drs. Chahal and Rutherford with the exception of finding Plaintiff could walk four rather than two hours a day.  Unlike cases in which an ALJ formulates an RFC without the benefit of any medical support, here, the ALJ did not wholly discount Drs. Chahal and Rutherford but instead adopted most of the limitations they identified when crafting Plaintiff's RFC.  The ALJ's RFC determination here is therefore differentiated from circumstances where no evidence or source opinion supported an ALJ's RFC determination.  *Arias v. Commissioner of Social Security Administration*, Case No. CV-22-08123-PCT-DMF, 2023 WL 2909220, at *6 (D. Ariz. April. 6, 2023).  The RFC determination is made "based on all of the relevant medical *and* other evidence."  20 C.F.R. § 404.1545(a)(3) (emphasis added).

The totality of the record demonstrates the ALJ's interpretation of the evidence is reasonable, consistent with the record, and consistent with the law that binds her.  An RFC is a legal decision, not a medical one.  *Garza v. Commissioner of Social Security*, Case No. 1:21-cv-00403-BAK (SAB), 2022 WL 2974691, at *2 (E.D. Cal. July 27, 2022) (internal citations omitted).  The ALJ did not

---

[5]   POMS stands for Program Operations Manual found at SSA - POMS: DI 25005.020 - Past Relevant Work (PRW) as the Claimant Performed It - 04/13/2017.

[6]   POMS DI 25005.020(f) states: "If a previous employer offered accommodations that allowed the claimant to perform PRW with his or her impairment, and the claimant retains the ability to do the PRW with the accommodations in place, find the claimant able to do PRW as he or she performed it even if the accommodations might not be available in other workplaces or if work ceased because the employer removed the accommodations."

substitute her judgment for that of "every medical opinion of record" as Plaintiff claims. Plaintiff's Motion to Remand on this basis is denied.

        D.    <u>The ALJ committed harmless error when she failed to discuss the consistency and persuasiveness of Dr. Olivares' opinion.</u>

Plaintiff argues the ALJ erred when she found Dr. Araza's opinions more persuasive than the opinions of Dr. Olivares but did not "articulate how persuasive she found Dr. Olivares to be." ECF No. 12 at 21. Plaintiff says because the ALJ did not say she found Dr. Olivares' opinions to be "not persuasive," the ALJ must necessarily have found Dr. Olivares' opinions "at least some[what] persuasive." *Id*. Plaintiff concludes "[t]his means that the ALJ also failed to either accept and include or reject and explain why she was not including limitations opined by a medical source whose opinion … she found to have at least some degree of persuasive value. For this reason, remand for further consideration is required." *Id*.

Plaintiff's contention is undermined by the ALJ's statement that she found Dr. Araza more persuasive than Dr. Olivares because Dr. Azara's opinions were "supported by and consistent with the objective medical evidence in the record." AR 39. The ALJ, citing her summary of findings (AR 31-33), found Plaintiff's mental impairments did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" and, therefore, were non-severe. AR 31. The ALJ discussed in detail Plaintiff's mental health history including reports from July 2019, July 2020, April 2021, May 2021, June 2021, October 2021, and January 2022. AR 32-33. These reports show depression in 2019 (AR 32), but a completely normal mental status as of July 2020. *Id*. On April 9, 2021, Plaintiff reported he stopped taking his medication and could cope by having morning coffee and an energy drink. *Id*. On April 19, 2021, Plaintiff reported feeling better and that he was enjoying activities with friends. *Id*. On May 7, 2021, Plaintiff's symptoms returned, he went back on medication, and by June 11, 2021 Plaintiff was feeling much better. *Id*. In August 2021, Plaintiff went on a trip with is daughter. *Id*. In October 2021, Plaintiff again stopped taking his medications because of reported nausea, although the record does not support Plaintiff's report. *Id*. By January 2022, Plaintiff's mental status exam was "completely normal" and the ALJ found Plaintiff suffering from only "mild depression." AR 33. The ALJ then concluded Plaintiff's

"medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas" with no evidence indicating there is nothing "more than a minimal limitation in … [Plaintiff's] ability to do basic work activities …." *Id*.

As Defendant notes, Dr. Olivares' narrative regarding Plaintiff's mental health "does not allege any mental allegations," but shows he was diagnosed with "MDD" (a major depressive disorder) and "adjustment d/o" (adjustment disorder). AR 367. Dr. Olivares goes on to state Plaintiff is receiving treatment at the VA and his "most recent MSE" (mental status exam) showed him to be "fully alert/oriented, polite, cooperative, no agitation noted, nml [(normal)] speech, mood euthymic, nml TP [(thought process)], and no "SI/HI/AH/VH" [(no suicidal or homicidal ideations or auditory or visual hallucinations)]. *Id*. Dr. Olivares states there is no history of decompensation in Plaintiff's file and his "MDI" (medically determinable impairments) "appear to be well controlled …" *Id*. Dr. Olivares concludes that Plaintiff "is able to adapt to usual workplace changes," and she is "[u]nable to determine if the … [Plaintiff] is able to return to" his previous work. *Id*. Dr. Olivares then opines that Plaintiff has mild limitations in his ability to understand, remember, apply information, interact with others, concentrate, persist, and maintain pace. AR 368. However, for reasons that Dr. Olivares does not explain, and despite stating Plaintiff "is able to adapt to usual workplace changes," she finds Plaintiff had moderate limitation in his ability to "adapt or manage" himself. AR 368.

Given Dr. Olivares found Plaintiff's mental limitations were mostly mild, and she offered no opinion regarding whether Plaintiff could return to his prior work, the Court finds that the ALJ did not reject all of Dr. Olivares' opinions. Indeed, the only rejection is Dr. Olivares' determination that Plaintiff had a moderate limitation in his ability to adapt or manage himself. Given these facts, the failure of the ALJ to discuss supportability and consistency of Dr. Olivares' single rejected opinion was harmless error.

Harmless error is an error that is "inconsequential to the ultimate nondisability determination." *Timothy R. v. Commissioner, Social Security Administration*, Civ. No. 6:18-cv-01837-MC, 2020 WL 1430780, at *5 (D. Ore. Mar. 24, 2020) *quoting Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). The Court, *sua sponte*, raises this issue because there is no doubt the ALJ would have reached the same result absent this error. *Molina*, 674 F.3d at

1115-1116 (applying the harmless error principle in the Social Security context when it can be concluded "from the record that the ALJ would have reached the same result absent the error.").[7]

Based on the foregoing, the Court finds Plaintiff's arguments regarding the ALJ's failure to discuss the consistency and persuasiveness of Dr. Olivares' opinions not sufficient to warrant remand for further proceedings.

## V.     Order.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 12) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 14) is GRANTED.

IT IS FURTHER ORDERED that judgment be entered in favor of Defendant and that this matter be closed by the Clerk of Court.

DATED this 18th day of December, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court notes at least one other court in the Ninth Circuit has *sua sponte* reviewed harmless error. *Baptista v. Astrue,* Case No. CV 07-3053-MO, 2008 U.S. Dist, LEXIS 101407, at *27–28 (D. Or. Dec. 2, 2008) (*sua sponte* determination that, because there were potential conflicts, the ALJ's failure was not harmless error). This case has not been reversed on appeal. *See also Tiffany L.D. v. Kijakazi,* Case No. 20-CV-00342-GKF-SH, 2022 WL 2612232, at *4 n.6 (N.D. Okla. Feb. 16, 2022) (a *sua sponte* determination of harmless error may be appropriate where 'the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings'") quoting *Alvey v. Colvin,* 536 Fed.Appx. 792, 794 (10th Cir. 2013) (unpublished) (citing *Wyoming v. Livingston,* 443 F.3d 1211, 1226 (10th Cir. 2006)); *Park v. Colvin,* Case No. 15 CV 50218, 2016 WL 7241187, at *3 (N.D. Ill. Dec. 15, 2016) ("the Court chooses to *sua sponte* invoke the harmless error doctrine because the Court is confident that remand on this issue is not necessary") (internal citations omitted).